**Subject:** Rosenfeld v. AC2T, Inc., No. 1:20-cv-04662-FB-PK (E.D.N.Y.) | Accepting Service of Subpoena o/b/o USM

**Date:** Thursday, September 8, 2022 at 6:54:48 PM Central Daylight Time

**From:** David Tyler Adams

**To:** Cal Mayo

**CC:** Tara Young, Maria H. Ruiz, Jacob Abrams, Anitra R. Lawrence

**Attachments:** 2022.09.08 AC2T Subpoena to USM Final.pdf

Cal,

Attached is a subpoena to be served on the University of Southern Mississippi in connection with *Rosenfeld v. AC2T, Inc.*, No. 1:20-cv-04662-HG-PK (E.D.N.Y.).  Are you willing to accept service of the attached subpoena on behalf of the University?

Thank you,

Ty

David Tyler (Ty) Adams
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Tel.   (212) 506-1927
Fax.  (212) 835-5067
DAdams@kasowitz.com

This e-mail and any files transmitted with it are confidential and may be subject to the attorney-client privilege. Use or disclosure of this e-mail or any such files by anyone other than a designated addressee is unauthorized. If you are not an intended recipient, please notify the sender by e-mail and delete this e-mail without making a copy.



EXHIBIT

"P"

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KALMAN ROSENFELD, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>AC2T, INC., BONNER ANALYTICAL TESTING CO., and JEREMY HIRSCH,<br><br>      Defendants. | Case No. 1:20-cv-04662-HG-PK |

## NOTICE OF SUBPOENA

**PLEASE TAKE NOTICE** that, pursuant to Rules 30 and 45 of the Federal Rules of

Civil Procedure, Defendant AC2T, Inc., by and through his undersigned counsel of record, will

serve the subpoena attached as Exhibit 1 upon the following non-party:

  University of Southern Mississippi
  118 College Drive
  Hattiesburg, Mississippi 39406-0001

  This subpoena commands that this non-party produce documents to Dukes Dukes &

Hunter, 226 W. Pine Street, Hattiesburg, Mississippi 39402, by October 8, 2022 or at

any other time or place as counsel for the parties may agree.

Dated: September 8, 2022
   New York, New York


          KASOWITZ BENSON TORRES LLP


      By: _/s/ Daniel R. Benson_
         Daniel R. Benson
         David Tyler Adams
         1633 Broadway
         New York, New York 10019
         Tel.: (212) 506-1700

1

E-Mail: dbenson@kasowitz.com
      dadams@kasowitz.com

Maria H. Ruiz
Jacob Abrams
1441 Brickell Avenue,
Suite 1420
Miami, Florida 33131
Tel.: (786) 587-1040
E-Mail: mruiz@kasowitz.com
      jabrams@kasowitz.com

2

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on September 8, 2022, I caused a true and correct copy of the foregoing

notice of subpoena, dated September 8, 2022, to be served by electronic mail upon:


J. Cal Mayo, Jr.
Mayo Mallette
2094 Old Taylor Road, Suite 200
Oxford, Mississippi 38655
Tel.: (662) 236-0055
E-mail: cmayo@mayomallette.com

Yitzchak Kopel
Alec M. Leslie
Bursor & Fisher, P.A.
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: ykopel@bursor.com
          aleslie@bursor.com


I declare under penalty of perjury that the foregoing is true and correct.


Dated: September 8, 2022                    */s/ David Tyler Adams*
       New York, New York                   David Tyler Adams

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Eastern District of New York ▢ ▾

KALMAN ROSENFELD, individually and
on behalf of all others similarly situated

| | |
|---|---|
| *Plaintiff* | ) |
| v. | ) |
| | ) |
| AC2T, Inc. | ) |
| *Defendant* | ) |

Civil Action No. 1:20-cv-04662-HG-PK

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

University of Southern Mississippi
118 College Drive
Hattiesburg, Mississippi 39406-0001

To:

*(Name of person to whom this subpoena is directed)*

❑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Dukes Dukes & Hunter<br>226 W. Pine St.<br>Hattiesburg, Mississippi 39402 | Date and Time:<br><br>October 8, 2022 |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 09/07/2022

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| Signature of Clerk or Deputy Clerk | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* AC2T, Inc.
, who issues or requests this subpoena, are:

David Tyler Adams (dadams@kasowitz.com), 1633 Broadway, New York, New York 10019, (212) 506-1927

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

| Print | Save As... | Add Attachment | | Reset |

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Exhibit 1

## **DEFINITIONS**

As used in these Requests, and in addition to the definitions provided by Rule 26.3 of the Local Rules, which are expressly incorporated herein, the following terms have the meanings indicated:

1.      Each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules.

2.      "AC2T" refers to AC2T, Inc., the defendant in this Action, doing business as Spartan Mosquito.

3.      "Action" means the civil action entitled Rosenfeld v. AC2T, Inc., No. 1:20-cv-04662-FB-PK, currently pending before the United States District Court for the Eastern District of New York.

4.      The words "and," "or," and "any" are intended to be construed as necessary to bring within the scope of these requests for production any information which otherwise might be construed to be outside the scope of any of them.

5.      The term "concerning" means in connection with, referring to, relating to, describing, evidencing or constituting.

6.      "Documents" is used in the broadest possible sense within the parameters of Federal Rules of Civil Procedure and includes, without limitation, the original or any non-identical copy of all writings of any nature whatsoever, whether electronically stored information, typewritten, printed or recorded, or reproduced by any other mechanical or electronic process, or written or produced by hand, including, but not limited to the following: contracts or agreements; communications, including correspondence, e-mails, filings, telegrams, memoranda, records, books, summaries of records or of personal conversations or interviews,

1

blog posts, posts on Twitter, Instagram, Facebook, and any other social media platform; diaries; forecasts; statistical statements; accountants' work papers; graphs; charts; accounts; bank books; deposits slips; analytical records; notes, minutes or records of meetings, conferences or conversations; reports, and/or summaries of interviews, reports of consultants; appraisals; reports and/or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; notes; projections; working papers; securities ledgers; checks, front and back; check stubs or receipts; microfilm; photographs; sound or video tapes; computer tapes and discs; information contained in any computer, video, audio, magnetic or other mechanical device or machine although not yet printed out; and all drafts or copies of the foregoing. The term Documents shall not be limited to Your professional communication mediums, but shall also include personal e-mail, faxes, text messages, or otherwise.

7.    "Dr. Yee" refers to Dr. Donald Yee, Professor at the University of Southern Mississippi.

8.    "Hirsch" refers to Jeremy Hirsch, founder of AC2T, Inc.

9.    "Bonner" refers to Bonner Analytical Testing Co.

10.    "Paper" means the paper titled, "No Evidence That Salt Water Ingestion Kills Adult Mosquitoes (Diptera: Culicidea)", published on or about March 2020 in the Journal of Medical Entomology, Volume 58, Issue 2, which is based on the Study.

11.    "Plaintiff" means Kalman Rosenfeld, plaintiff in the Action, together with his agents, employees, consultants, attorneys, and persons acting or purporting to act on his behalf, including but not limited to Plaintiff's Counsel.

12.    "Plaintiff's Complaint" is the complaint filed by Plaintiff in the Action, attached to this Subpoena as Exhibit 2.

2

13.     "Plaintiff's Counsel" shall mean Bursor & Fisher, P.A., together with its partners, associates, of counsel, shareholders, members, and employees who are working on this Action, and all agents, consultants, and representatives who assist such persons in connection with this Action.

14.     "Product" shall mean the Spartan Mosquito Eradicator, identified in paragraph 1 of Plaintiff's Complaint in this Action.

15.     The terms "Request" or "Requests" refer to the requests for documents stated herein.

16.     The term "Study" refers to the testing performed in 2019 and 2020 that serves as the basis of the Paper.

17.     "You" or "Your" refers to the University of Southern Mississippi.

18.     The use of the singular form of any word includes the plural and vice versa.

## **INSTRUCTIONS**

A.      Use of a singular noun shall be construed to include the plural noun and use of a plural noun shall be construed to include the singular noun.

B.      The use of a verb in any tense shall be construed as the use of that verb in all other tenses whenever necessary to bring within the scope of the discovery request Documents or information that might otherwise be construed to be outside its scope.

C.      You are requested to produce all Documents in Your possession, custody or control.

D.      Documents shall be produced in the order in which they appear in their original files or other storage areas and shall not be shuffled or otherwise rearranged.

3

E.      The Documents produced in this request shall include all attachments and enclosures, whether or not they are separately responsive to any Request.

F.      In the event any Document called for by this request has been destroyed, discarded, misplaced or otherwise disposed of, or is otherwise presently unavailable, the unavailable Document is to be identified as follows: addressor, addressee, indicated or blind copies, date, subject matter, number of pages, attachments or appendices, all persons to whom the document was distributed, shown or explained, date of destruction or disposal, and name and business title of person who destroyed, discarded, misplaced or disposed of such Document.

G.      Electronically stored information should be produced in the same electronic form as it exists in each of the party's computers, original files or other storage media and the production should preserve the integrity of the underlying electronically stored information, i.e., the original formatting, metadata, email header information and, where applicable, the revision history. If any information or data is withheld because such information or data is stored electronically and is not reasonably accessible without undue burden or cost, it is to be identified by the subject matter of the information or data and the place or places where such information is maintained.

H.      The Requests herein are continuing in nature. If at any time any Documents are obtained in addition to those that have been previously been produced to Plaintiff, prompt supplementation of such responses to these Requests is required.

I.      Each Request shall be answered separately and fully in writing, unless it is objected to, in which event the objecting party shall produce the portion of the document to the extent the Request is not objectionable.

J.      All grounds for an objection to a Request shall be stated with specificity.

K.      Unless otherwise stated, the time period for these Requests is June 1, 2016 to the present.

## **REQUESTS FOR PRODUCTION**

1.      All Documents and Communications relating to the Study.

2.      All Documents and Communications relating to the Paper.

3.      All Documents and Communications relating to the payment, commissioning, sponsorship, or any other financial contribution or assistance provided by any person or entity in connection with the Study or the Paper.

4.      All communications to, from, copying, or blind copying Janet Donaldson or persons acting on her behalf concerning the Product, AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

5.      All communications to, from, copying, or blind copying Gordon Cannon or persons acting on his behalf concerning the Product, AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

6.      All communications to, from, copying, or blind copying Chris Winstead or persons acting on his behalf concerning the Product, AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

7.      All communications to, from, copying, or blind copying Marcia Landen or persons acting on his behalf concerning the Product, AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

8.      All communications to, from, copying, or blind copying Colin Purrington concerning the Product, AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

9.      All communications to, from, copying, or blind copying Yitz Kopel or any other

partner, member, associate, employee, or agent of Bursor & Fisher, P.A. concerning the Product,

AC2T, Spartan Mosquito, Hirsch, Bonner, the Study, the Paper, or this Action.

Dated:  September 7, 2022
          New York, New York


                              KASOWITZ BENSON TORRES LLP


                    By:   /s/ Daniel R. Benson
                          Daniel R. Benson
                          David Tyler Adams
                          1633 Broadway
                          New York, New York 10019
                          Tel.: (212) 506-1700
                          E-Mail: dbenson@kasowitz.com
                                  dadams@kasowitz.com

                          Maria H. Ruiz
                          Jacob Abrams
                          1441 Brickell Avenue,
                          Suite 1420
                          Miami, Florida 33131
                          Tel.: (786) 587-1040
                          E-Mail: mruiz@kasowitz.com
                                  jabrams@kasowitz.com

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KALMAN ROSENFELD, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>   v.<br><br>AC2T, INC., BONNER ANALYTICAL TESTING CO., and JEREMY HIRSCH.<br><br>            Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kalman Rosenfeld ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendants AC2T, Inc. ("Spartan"), Bonner Analytical Testing Co., and Jeremy Hirsch (collectively, "Defendants").

## NATURE OF THE ACTION

1.    This is a class action lawsuit on behalf of purchasers of the Spartan Mosquito Eradicator (the "Product") in the United States.

2.    Spartan represents that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control," as shown in the image below:



3.      Spartan also represents that the Product "[s]ignificantly decreases population within 15 days," and "[p]rovides up to 95% mosquito control for up to 90 days"[1]:



# ABOUT SPARTAN MOSQUITO ERADICATORS

**What is the Spartan Mosquito Eradicator?**

The Spartan Mosquito Eradicator is a uniquely effective, long-lasting, continuous mosquito control product. Spartan Mosquito Eradicators do not require batteries or electricity, just water!

- Easy to install — Hang along the property perimeter approximately six feet off the ground from a tree branch close to the trunk, within 180 feet of each other.
- Do not require power — Just add warm water and shake.
- Provide continuous, long range protection.
- Minimal maintenance — Maintain water level and replace at least every 90 days.
- Are extremely effective — Significantly decreases population in about 15 days. Provides up to 95% mosquito control for up to 90 days.

4.      Unfortunately for consumers, however, each of these representations is false and misleading.  The Spartan Mosquito Eradicator is a complete scam.  As explained below, the Product is ineffective for mosquito control because it does not kill mosquitoes or decrease mosquito populations.  Worse, Defendants are well-aware that the Product is ineffective yet sell it anyway in pursuit of profit and in clear disregard for public health and safety.

5.      Independent peer-reviewed research recently published in the Journal of the Florida Mosquito Control Association shows that the Spartan Mosquito Eradicator does not live up to the representations on the Product's labeling.[2]  To be sure, Defendants' Product was tested both in a laboratory setting and field study "to evaluate the effectiveness of the commercial

---

[1] https://spartanmosquito.com/mosquito-control/

[2] Aryaprema, et al., *Efficacy of Commercial Attractive Toxic Sugar Bait Station (ATSB) Against Aedes* Albopictus, JOURNAL OF THE FLORIDA MOSQUITO CONTROL ASSOCIATION, Vol. 27, 2020, available at  https://www.researchgate.net/profile/RuiDe_Xue/publication/342562143
_JFMCA672 020/l inks/5efb419f92851c52d609f552/JFMCA672020.pdf#page=86

product in reducing the population densities of *Aedes albopictus*," a common species of mosquito in the United States known to carry disease.

6.      The results of the study were clear.  The study concluded that "[b]oth the laboratory and field components of our study show that the Spartan Mosquito Eradicator is not effective in reducing the abundance of *Ae. Albopictus*."  *Id.* at pp. 4; *see also id.* at pp. 1 ("Neither laboratory nor field components of the study showed significant evidence that the commercial product could reduce the abundance of *Ae. albpopictus* in the natural environment.").

7.      The findings of this study were hardly surprising.  The Product only has three "active" ingredients:  sugar, salt, and yeast.  Consumers are also instructed to add water to the devices.  The devices purport to attract mosquitoes to drink their four-ingredient solution which supposedly kills the mosquitoes before they can breed.

8.      Here is how Spartan explains this process:  "[t]he Spartan mosquito Eradicators contain sugar, salt, and yeast.  When a mosquito ingests the Sodium Chloride (salt), its crystalline structure 'cuts' their stomach, causing it to rupture.  The fermentation process also continues after mosquitoes ingest the mixture, and CO2 production in the mosquito also causes the stomach to rupture."

9.      But if this claim of having solved one of mankind's most vexing problems and greatest health challenges using just sugar, salt, and yeast *sounds* too good be true, that is because it *is*.

10.      Scientists have repeatedly researched whether consuming salt can kill mosquitoes. It cannot.  In fact, once water is added, the Product's salt content is remarkably close to the salt content in human blood – 1% of the Product's solution vs. .9% observed in human blood.  Sadly,

mosquitoes, which regularly feed on human blood in real life, do not experience "cuts" in their stomachs from the salt content.

11.     To the contrary, rather than dying from the salt, mosquitoes' bodies are able to eliminate it.  As a leading textbook explains:  "[w]hen a female takes a blood meal, excess salts (Na+, K+ and Cl-), which are absorbed across the stomach, are rapidly eliminated by Malpighian Tubules/hindgut activity."[3]  In other words, mosquitoes simply urinate the salt out – just like other animals.

12.     That salt cannot kill mosquitoes is further supported by another independent peer-reviewed scientific study conducted by the School of Biological, Environmental, and Earth Sciences at the University of Mississippi, attached hereto as Exhibit A.[4]  The study explains that "several manufacturers … have promoted devices that claim ingestion of salt will significantly reduce populations of wild mosquitoes … there are no known scientific efficacy data that support these claims." Ex. A, at pp. 2.  To be sure, the study tested the impact of salt ingestion on 9 common species of mosquito:  *Aedes aegypti*, *Aedes albopictus*, *Aedes dorsalis*, *Aedes notoscriptus*, *Aedes vigilax*, *Anopheles quadrimaculatus*, *Culex pipiens*, *Culex quinquefasciatus*, and *Culex tarsalis*.  *Id.*  The study states that "[b]ased on our data and coupled with the fact that mosquitoes have physiological and behavioral adaptations that allow them to avoid or process salt (as found in blood meals), we conclude that there is no scientific foundation for salt-based control methods of mosquitoes."  *Id.*

---

[3] Clements, A. N. 2000. The Biology of Mosquitoes. CABI publishing.

[4] Although the article has passed the peer-review process and has been accepted for publication, it has not yet peen published.  For the ease of the Court and the parties, Plaintiff has attached herewith a copy of the study that has been marked "accepted" by the Journal of Medical Entomology.

13.     The study specifically mentions the Spartan Mosquito Eradicator as a device that claims "salt feeding by adults will reduce mosquito numbers in the wild." *Id.* at pp. 3.  However, the authors note "there are no data that have tested the effectiveness of salt as a substance to kill mosquitoes." *Id.*  For this reason, the authors "tested the effect of salt on survival in nine species of adult mosquitoes" and "hypothesized that low concentrations of salt would not affect adult [mosquito] survival, and we predicted that the addition of salt to a standard sugar diet would not prove to be an effective control mechanism for adult mosquitoes." *Id.* at pp. 3.

14.     The findings of the study were stated as follows:

> Our results from testing the effect of salt on the survival of nine mosquito species of public health importance were clear: <u>there was no evidence from these trials that ingestion of salt had an added lethal effect on adult mosquitoes</u>. Thus, our data support the hypothesis that low concentrations of salt would not affect adult mosquito survival. In seven out of nine of our species we found that mosquitoes that ingested a diet with salt and sugar survived at rates equal to those fed a standard diet of sugar alone.

*Id.* at pp. 9 (emphasis added).

15.     Importantly, the authors also warned that "in many instances state and federal laws do not require efficacy data to support claims made by these devices" and that they "caution that relying on an approach that has no scientific basis," such as Spartan Mosquito Eradicator, "may result in a false sense[] of security for homeowners, which may be dangerous in areas where mosquitoes could potentially be transmitting pathogens." *Id.* at pp. 12.

16.     Here too, the results are clear:  "we conclude that salt is ineffective for the control of mosquito populations by individual consumers, regulatory agencies, or mosquito control districts." *Id.* at pp. 13.

17.     Other research shows that mosquitoes have taste receptors and are capable of detecting a food's salt content.  If a food or liquid is too salty, mosquitoes will not consume it and will not lay eggs there.[5]

18.     Incredibly, a recent published review found that consumption of salt content in mosquitoes causes them to consume *more* blood than they otherwise would have.[6]

19.     Nor is there any truth to Defendants' claim that the combination of sugar and yeast is lethal to mosquitoes.  Wild yeast is ubiquitous in nature and it causes fermentation of rotting (sugary) fruit, which is a preferred food for mosquitoes.[7]  Wild yeasts are also regularly found in nectar, another preferred mosquito food.[8]  Needless to say, these natural mosquito food sources do not cause lethality.

20.     Yeast is not just found throughout nature.  It is also already present in mosquitoes' intestinal microbiota.[9]  Yeast is an important and necessary part of mosquito microbiota, just as sugary objects are a natural food source for mosquitoes.[10]  And as with salt,

---

[5] Christophers, R. 1960. Aedes aegypti. The yellow fever mosquito: Its life history, bionomics and structure. Cambridge University Press

[6] Gonzales, K.K. and I.A. Hansen. 2016. Artificial diets for mosquitoes. International Journal of Environmental Research and Public Health. 13: 1267

[7] Peach, Daniel A. H. and Gerhard Gries.  Mosquito Phytophagy – Sources Exploited, Ecological Function And Evolutionary Transition To Haematophagy.  2019.

[8] Robert N. Schaeffer, et al.  *Consequences of a nectar yeast pollinator preference and performance*.  BRITISH ECOLOGICAL SOCIETY (Sept. 2016).  Available at https://besjournals.onlinelibrary.wiley.com/doi/full/10.1111/1365-2435.12762.

[9] Ryan C. Smith, et al. *The Plasmodium bottleneck*: *malaria parasite losses in the mosquito vector*.  MEM. INST. OSWALDO CRUZ (Aug. 2014).  Available at https://www.scielo.br/scielo.php?pid=S0074-02762014000500644&script=sci_arttext

[10]  Jovana Bozic, et al. *Mosquitoes can harbour yeasts of clinical significance and contribute to their environmental dissemination*. Environmental Microbiology Reports (July 2017). Available at https://www.researchgate.net/publication/318503736_Mosquitoes_can_harbour_yeasts_of_clinical_significance_and_contribute_to_their_environmental_dissemination/link/5b0fef854585156fccd7b028/download

yeast and sugar are also found in human blood.[11]  Thus, the suggestion that the combination of

yeast and sugar could cause mosquitoes to explode is absurdly misguided.

21.     It is for this reason that the Mosquito Illness Alliance has listed the Product as the

first in their list of "Myths/Scams (Products that do not work)."  Its website notes that the

Product is "based on a 'yeast trap' design" and its claims of efficacy "have been debunked

repeatedly by independent research."[12]

22.      Defendants already know that the Product does not work.  They have repeatedly

commissioned efficacy tests which found that their marketing claims were unsupported and that

the Product did not work as advertised.  However, they have suppressed publication of these

findings using nondisclosure agreements and threats to the scientists involved in this research.

23.     These threats to scientists sounding the alarms on the Product's failure to work as

advertised are key to furtherance of Defendants' fraudulent scheme.  Spartan's founder and

spokesperson, Jeremy Hirsch, has made personal threats to at least one scientist involved in this

research in order to intimidate him out of publicizing the results of his research.

24.      Mr. Hirsch also left menacing communications to Colin Purrington, a biologist

that has published results of his own investigation into the Products on the internet.  After

leaving a review of his findings of the Product's inefficacy on Amazon, Mr. Hirsch wrote a

public response identifying Mr. Purrington's wife's place of employment.

25.     The fraudulent scheme has also been advanced with cooperation from Bonner

Analytical Testing Co., which is owned by Christopher Bonner, Spartan's Vice President.

---

[11] Tawidian et al., Mosquito-Fungus Interactions and Antifungal Immunity, Insect Biochemistry and Molecular Biology 111 (2019) 103182.

[12] https://www.mosquitoillnessalliance.org/myths-and-truths

26.     Defendants publish the findings of a purported test of the Product showing

significant efficacy on the label.  They also regularly tout the results of this "test" in the media.



27.     But this "test," which was ran by Bonner Analytical, was scientifically invalid, as

Defendants have been advised.  First, it was not even performed on the correct product.  This test

was conducted on a former iteration of the Product which contained boric acid – an actual poison

capable of killing mosquitoes.

28.     Moreover, the test was (1) conducted without any scientific control and (2) was

conducted in a location and during a period when the local government was already spraying

insecticides meant to kill and reduce mosquito populations.  The fact that Defendants happened

to purportedly observe a reduction in mosquito population was completely meaningless – this

reduction was due to the spraying, not the Product.

29.     Upon information and belief, nobody with scientifically legitimate qualifications

participated in this "testing."  A qualified entomologist was invited to participate.  However, she

declined to do so once she was presented with the nondisclosure agreement Defendants have repeatedly used to silence other scientists.

30.     Defendants have sold tens of millions of dollars' worth of the Product through their false promises of effectiveness to consumers in the United States.

31.     They have done so by capitalizing on health risks posed by mosquitoes to humans.  Defendants' literature has correctly stated that "[t]he mosquito is the deadliest animal in the world."  In this regard, Defendants' scheme is especially malicious in that they know consumers are relying on their worthless Product to protect them from mosquito-borne illnesses.

32.     Plaintiff is a purchaser of Spartan Mosquito Eradicator who asserts claims on behalf of himself and similarly situated purchasers of Spartan Mosquito Eradicator for fraud, violations of the consumer protection laws of New York, unjust enrichment, breach of express warranty and violation of the Magnuson-Moss Warranty Act.

## PARTIES

33.     Plaintiff Kalman Rosenfeld is a citizen of New York who resides in Brooklyn, New York.  In the summer of 2019, Mr. Rosenfeld purchased the Product from a Home Depot store in Brooklyn for approximately $25.  Prior to purchase, Mr. Rosenfeld carefully read the Product's labeling, including the representations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."  Mr. Rosenfeld believed these statements to mean that the Product would effectively eliminate mosquitoes.  Mr. Rosenfeld relied on these representations in that he would not have purchased the Product at all, or would have only been willing to pay a substantially reduced price for the Product, had he known that these representations were false and misleading.  Plaintiff Rosenfeld used the Product according to the Product's directions, but it did not provide effective mosquito control as advertised.

34.     Defendant AC2T, Inc. is a Mississippi corporation with its principal place of business in Laurel, Mississippi.  Defendant AC2T, Inc., manufactures and sells the Product under the Spartan Mosquito brand name.

35.     Defendant Bonner Analytical Testing Co. is a Mississippi corporation with its principal place of business in Hattiesburg, Mississippi.  Upon information and belief, Defendant Bonner Analytical Testing Co. is responsible for conducting and reporting inaccurate test results as to the Product's efficacy.

36.     Defendant Jeremy Hirsch is the President of AC2T, Inc and a resident of Mississippi.  Mr. Hirsch acts as Spartan's spokesperson, regularly promoting the Product on television and other media.  He has also personally participated in the campaign of intimidation and concealment discussed above.

## JURISDICTION AND VENUE

37.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

38.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

39.     All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendants.

## CLASS REPRESENTATION ALLEGATIONS

40.     Mr. Rosenfeld seeks to represent a class defined as all persons in the United States who purchased the Product (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

41.     Mr. Rosenfeld also seeks to represent a subclass defined as all Class members who purchased the Product in New York (the "New York Subclass").

42.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

43.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendants' labeling, marketing and promotion of the Product is false and misleading.

44.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing and promotional materials and representations, purchased the Product, and suffered a loss as a result of that purchase.

45.     Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute

this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

46.      The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Deceptive Acts Or Practices, New York Gen. Bus. Law § 349

47.      Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

48.      Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

49.      By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by making false representations on the label of the Product.

50.      The foregoing deceptive acts and practices were directed at consumers.

51.      The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Product to control mosquitoes.

52.     Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Product if they had known that The Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

53.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT II
### False Advertising, New York Gen. Bus. Law § 350

54.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

55.     Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendants.

56.     Based on the foregoing, Defendants have engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law because it fundamentally misrepresents the ability of The Product to control mosquitoes.

57.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

58.     These misrepresentations have resulted in consumer injury or harm to the public interest.

59.     As a result of these misrepresentations, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Product

if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

60. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## COUNT III
### Unjust Enrichment

61. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

62. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

63. Plaintiff and Class members conferred benefits on Defendants by purchasing the Product.

64. Defendants have knowledge of such benefits.

65. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Product. Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

66. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT IV

### Breach of Express Warranty

67.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

68.     Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendants.

69.     In connection with the sale of the Product, Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers issued written warranties by representing that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

70.     In fact, The Product does not conform to the above-referenced representations because the Product is ineffective for its stated purposes.

71.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because (a) they would not have purchased the Product if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

72.     On March 16, 2020, a pre-suit notice letter was sent to Defendants via certified mail that provided notice of Defendants' breach of warranty and demanded that Defendants rectify the breaches of warranty complained of herein.  The letter also stated that if Defendants refused to do so, a class action complaint seeking damages would be filed.  Defendants have failed to comply with the letter.

## COUNT V

## Magnuson-Moss Warranty Act

73.　　Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

74.　　Plaintiff brings this case individually and on behalf of the members of the proposed Class against Defendants.

75.　　The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

76.　　Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

77.　　Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

78.　　In connection with the sale of the Product, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

79.　　In fact, The Product is ineffective to control mosquitoes.

80.　　By reason of Defendants' breach of warranty, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

81.　　Plaintiff and Class members were injured as a direct and proximate result of Defendants' violation because (a) they would not have purchased the Product if they had known that the Product was ineffective for its stated purposes, and (b) they overpaid for the Product on account of its misrepresentations that it "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

## COUNT VI

### Fraud

82.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendants.

84.     As discussed above, Defendant misrepresented that the Product "eradicate[s] your mosquito population for up to 90 days," and that it provides "do-it-yourself mosquito control."

85.     The false and misleading representations and omissions were made with knowledge of their falsehood.  As set forth above, Defendants were repeatedly notified that their Product did not work.

86.     The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Product.

87.     The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and Subclass, who are entitled to damages and other legal and equitable relief as a result.

### RELIEF DEMANDED

88.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

      a.      For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

h.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury on all claims so triable.

Dated:  September 30, 2020          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:  <u>/s/ *Yitzchak Kopel*</u>
        Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax: (212) 989-9163
E-Mail:  scott@bursor.com
        ykopel@bursor.com
        aleslie@bursor.com

*Attorneys for Plaintiff*